**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **J.W.**, and<br>**S.W.**, Individually and<br>As Parent and Next Friend of **J.W.**,<br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**CHICAGO PUBLIC SCHOOL DISTRICT<br>NO. 299, JANICE K. JACKSON, EdD**, and<br>**RON KUBALANZA**,<br><br>　　　　Defendants. | Case No. |

## <u>COMPLAINT</u>

NOW COMES Plaintiffs J.W., and S.W.,[1] individually and as the natural parent and next friend of J.W., and for their Complaint against Defendants CHICAGO PUBLIC SCHOOLS DISTRICT NO. 299 ("DISTRICT 299"), JANICE K. JACKSON, EdD, in her capacity as Chief Executive Officer of DISTRICT 299, and RON KUBALANZA, individually and in his capacity as the Manager of Nonpublic School Supports for DISTRICT 299's Office of Diverse Learner Supports and Services, hereby state as follows:

### PRELIMINARY STATEMENT

1.　　This Complaint seeks justice for a 10-year-old severally autistic, non-verbal boy with cystic fibrosis, who on February 12, 2018, was inexplicably sent home from Walter S. Christopher Elementary School, a school operated by DISTRICT 299, with all of his belongings.

---

[1] As a minor, J.W. is permitted to be named in the filings by only his initials. Fed. R. Civ. Pro. 5.2(a). Accordingly, in order to protect J.W.'s anonymity, the Court must also permit S.W., the natural parent and next friend of J.W., to remain anonymous and also only be named by her initials.

It was the bus attendant who dropped off J.W. that first informed J.W.'s family that it was J.W.'s final day at school.

2.      In the last seven years, S.W. has sought a proper school placement for J.W., attempting to work with DISTRICT 299 so that J.W. could get the education he needed and deserved under the law.  Rather than provide such an education, DISTRICT 299 transferred J.W.—who has an uncontested and documented need for stability and adverse reaction to change—to six different schools, each time with promises that things would be better.  Each time things got worse.

3.      On February 12, 2018, DISTRICT 299 formally gave up on J.W., by unenrolling him from Christopher and failing to provide for his enrollment at Defendants' intended placement for J.W., Blue Cap.

4.      Despite repeated pleas to DISTRICT 299 to help J.W. and to provide for his enrollment in an appropriate school, DISTRICT 299 refused, instead posturing legal positions and seeking to force S.W. to accept a situation that would be untenable or face being subjected to state action for not having her child enrolled in a school.

5.      After repeated phones calls and emails to counsel for CPS went ignored, on February 15, 2018, J.W. and S.W., as the natural parent and next friend of J.W., formally initiated a Due Process Complaint with DISTRICT 299 and the Illinois State Board of Education.

6.      Since February 12, J.W. has not been allowed back into an appropriate school nor has DISTRICT 299 provided for a placement in a school that complies with his Individual Education Program ("IEP"), which requires J.W.'s placement at a therapeutic day school that utilizes ABA strategies.

7.     In an effort to stop the harm inflicted upon J.W. and S.W., individually and as the natural parent and next friend of J.W., they file this complaint to prevent Defendants, DISTRICT 299, its Chief Executive Officer, JANICE K. JACKSON, and RON KUBALANZA, from continuing to exclude J.W. from school on the basis of his disability, to compensate him with appropriate educational services for the school time he has missed based upon defendants' actions and to prevent Defendants from simply giving up on this child after seven years of bouncing him around from one school, to the next school, to the next school, to the next school, to the next school, to the next school.

8.     Defendants' action of unilaterally unenrolling J.W. deprived J.W. of rights established by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*, and accompanying regulations; Section 504 of Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and accompanying regulations; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and accompanying regulations; and the due process clause of the Fourteenth Amendment of the United States Constitution.

9.     Defendants' action has deprived S.W. of the rights afforded to her by the Fourteenth Amendment of the United States Constitution by unilaterally unenrolling J.W. from school without prior notice and prohibiting his enrollment at any other appropriate school, thereby subjecting her to penalties by prohibiting her from complying with state law. *See* 105 Ill. Comp. Stat. § 5/26-10.

10.    Defendants' unilateral unenrollment of J.W. interferes with J.W.'s rights protected under the ADA, and interferes with S.W.'s assistance of J.W. in exercising and enjoying those rights, also in violation of the ADA.  *See* 42 U.S.C. § 12203(b).

11.     Defendants' unilateral unenrollment of J.W. was in retaliation to S.W. and her son, J.W., advocating on J.W.'s behalf and involving the undersigned counsel to advocate for J.W., in violation of both Section 504 and the ADA.

## JURISDICTION AND VENUE

12.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4).

13.     This case is brought pursuant to 29 U.S.C. § 794, 42 U.S.C. § 1983, 42 U.S.C. § 12101 *et seq*., and 20 U.S.C. § 1401 *et seq*.

14.     Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202.

15.     The Court has jurisdiction over Plaintiff's supplemental claims based upon state law pursuant to 28 U.S.C. § 1367(a).

16.     Venue in this Court is proper under 20 U.S.C. § 1391(b) because, on information and belief, Defendant JACKSON and Defendant KUBALANZA are employed in Cook County by DISTRICT 299, which is located within Cook County, which is within the jurisdiction of this judicial district, and all of the events or omissions that are the subject of this Complaint occurred within the jurisdiction of this judicial district.

## THE PARTIES

17.     Plaintiff J.W. is a resident of Chicago, Cook County, Illinois. He is 10 years old and, from September 2017 up until February 12, 2018, he was a student in a special education classroom at Walter S. Christopher Elementary School ("Christopher"), a school operated by Defendant DISTRICT 299. J.W. is eligible for special education services under the IDEA, as he is a "child with a disability" as defined by 20 U.S.C. §1401(3), and is also a qualified person with a disability within the meaning of 29 U.S.C. § 794, 29 U.S.C. §

705(2), and 34 C.F.R. § 104.3(j), and is entitled to be free of discrimination based on a disability under Section 504. Similarly, J.W. is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2), and is entitled to be free of discrimination based on his disability under the ADA.

18.     Plaintiff S.W. is a resident of Chicago, Cook County, Illinois, and the biological mother of J.W.

19.     Defendant DISTRICT 299 is a school board pursuant to 105 ILCS 5/10-2. It is a corporate and political body with the capacity to be sued. It receives federal funds pursuant to the IDEA for purposes of providing educational and related services to children who are eligible for special education and is required to provide a free and public education to all children with disabilities residing within its educational boundaries. DISTRICT 299 is a "person" as that term is used in Section 1983.

20.     Defendant JANICE K. JACKSON is, and at all relevant times herein, the Chief Executive Officer ("CEO") of DISTRICT 299. As the CEO, Dr. Jackson is generally responsible for the operation and administration of DISTRICT 299, including matters relating to special education.

21.     Defendant RON KUBALANZA is, and at all relevant times herein, the Manager of Nonpublic School Supports for DISTRICT 299's Office of Diverse Learner Supports and Services ("ODLSS"). As part of his duties, KUBALANZA has the power and obligation to provide all students who attend DISTRICT 299 and are eligible for special education at a therapeutic day school placement and related services under the IDEA, with FAPE, and to take appropriate steps to assure that DISTRICT 299 does not discriminate against disabled students in violation of Section 504.

## STATUTORY FRAMEWORK

22.     By virtue of its receipt of federal monies used to operate a special education program, DISTRICT 299 must comply with the requirements of the IDEA and accompanying regulations. 34 C.F.R. Part 300.

23.     Section 504 prohibits a school district from excluding a disabled child from school based upon that child's disability. *See* 29 U.S.C. § 794.

24.     Title II of the ADA is modeled after Section 504, and provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. *See* 42 U.S.C. § 12132.

25.     Furthermore, Section 504 and the ADA prohibit discrimination based on an individual's disability and retaliation for the exercise of the rights that each Act protects.  *See* 42 U.S.C. § 12203 (a); 34 C.F.R. § 104.61 (incorporating 34 C.F.R. § 100.7(e) by reference); 28 C.F.R. § 36.206.

26.     More broadly, the ADA prohibits "interference" with the exercise or enjoyment of rights protected by the ADA, or with the assistance of another in exercising or enjoying those rights.  42 U.S.C. § 12203(b).

27.     Pursuant to 34 C.F.R. § 300.503(a) and the Illinois Administration Code, 23 Ill. Admin. Code § 226.520, a school district is required to provide parents with prior written notice whenever the school district proposes to begin or change the student's educational placement.  In Illinois, "reasonable time" for the written notice, for purposes of 34 C.F.R. § 300.503(a), "is defined as ten days."  23 Ill. Admin. Code § 226.520.

28.     Under 34 CFR § 300.503(b), the content of the notice referenced above in Paragraph 27 must include:  (1) A description of the action proposed by the school district;  (2) An explanation of why the school district proposes to take the action; (3) A description of each evaluation procedure, assessment, record, or report the school district used as a basis for the proposed action; (4) A statement that the parents of a child with a disability have protection under the procedural safeguards and, the means by which a copy of a description of the procedural safeguards can be obtained; (5) Sources for parents to contact to obtain assistance in understanding their rights; (6) A description of other options that the IEP Team considered and the reasons why those options were rejected; and (7) A description of other factors that are relevant to the school district's proposed educational placement.

## FACTUAL ALLEGATIONS

29.     J.W. is a 10-year-old student who has severe autism and cystic fibrosis (pancreatic insufficiency), which requires regular g-tube feedings; he is non-verbal and has not developed a consistent method of expressing his wants and needs.  Independent and district-affiliated psychologists agree that J.W. has a severe Intellectual Disability ("ID"), and therefore, J.W. learns at a much slower rate than his peers and has poor safety awareness and impulse control.

30.     J.W. has been a student in DISTRICT 299 for seven years, having been placed in six separate schools in that time period.

### S.W.'s Repeated Requests To Revise J.W.'s IEP To Provide For A Therapeutic Day School Placement.

31.     Since 2011, S.W. has repeatedly requested that DISTRICT 299 revise J.W.'s IEP to provide for his placement at a therapeutic day school, on the recommendation of J.W.'s treating physician.  But each time, DISTRICT 299 has denied the request without explanation and, instead, transferred J.W. to a different placement within DISTRICT 299.

32.     After years of bouncing from one school to the next—each time with the hope that things would get better, but each time more disappointing than the last—S.W. sought the assistance of counsel in advocating for J.W.'s right to an education.

33.     With counsel, S.W. continued to try and work with DISTRICT 299, requesting that J.W.'s IEP be revised to provide for a therapeutic day school placement during IEP meetings convened on:  January 25, 2016; June 5, 2017; and October 11, 2017.

34.     In addition, counsel for S.W. attempted to continue a dialogue with DISTRICT 299 in between IEP meetings, including communications on:  March 2, 2017; June 16, 2017; October 19, 2017; and November 10, 2017.

35.     Six years and six schools since the initial request, on November 20, 2017, S.W., represented at this point by counsel, again renewed her request that J.W.'s IEP be revised to provide for a therapeutic day school placement.  *See* November 20, 2017 Letter to K. Ilijic from E. Manning and K. Cercone (Exhibit C to Due Process Complaint).  Her November 20 request also stated:  "Should the District deny this request to revise [J.W.]'s IEP to provide for the requested placement, please provide 'an explanation of why the [District] . . . refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the . . . refused action,' as is required under the IDEA. 20 U.S.C. § 1415(c)." *Id.*

36.     In response to the November 20, 2017 request—and after six years of repeated requests—DISTRICT 299 held an IEP meeting on December 22, 2017, during which J.W.'s IEP was finally revised to provide for a therapeutic day school placement.

37.     In between S.W.'s November 20 request and the IEP meeting on December 22, on December 12, 2017, DISTRICT 299 refused to allow S.W. to observe J.W. in his classroom, as she had done several times over the past three months since his enrollment at Christopher.

38.     Indeed, from December 2017 through February 8, 2018, DISTRICT 299 continued to prevent S.W. from observing J.W.  For instance, S.W. was prohibited from checking on J.W. despite the fact that school officials informed S.W. the day prior that the nursing staff was unable to give J.W. his medication while in the school's care.

**S.W.'s Requests for an Appropriate Therapeutic Day School for J.W.**

39.     Following the December 22, 2017 IEP revision, DISTRICT 299 made referrals to four private schools:  (1) Easterseals Chicago; (2) Easterseals Tinley Park; (3) Elim Christian Academy; and (4) Blue Cap.

40.     S.W. toured both Easterseals facilities and observed that Easterseals Tinley Park, in particular, would be an appropriate placement for J.W. as it employed ABA-trained professionals as well as full-time speech and occupational therapists, taught curriculums geared specifically towards students with autism, and offered a range of sensory and behavioral tools that J.W. would greatly benefit from in accessing his education.

41.     On January 13, 2018, DISTRICT 299 informed S.W. that Blue Cap was willing to accept J.W.

42.     On January 23, 2018, DISTRICT 299 informed S.W. that "it does not look like Easter Seals Chicago has the ability to meet [J.W.]'s needs with regard to a nurse."  January 13, 2018-February 12, 2018 Email Correspondence between K. Cercone, E. Manning, and K. Ilijic (Exhibit D to Due Process Complaint).

43.     On January 29, 2018, DISTRICT 299 informed S.W. that "due to [J.W.]'s medical needs," Easterseals Tinley Park was not able to accept J.W. *Id*.

44.     Surprised by this response—given the information provided during S.W.'s tour of Easterseals Tinley Park—S.W., through counsel, reached out to the facility's administration, who explained that the "medical needs" referred simply to the amount of direct nursing minutes in J.W.'s IEP; the one nurse on staff at Easterseals could not be available for all of J.W.'s direct nursing minutes. However, the administration was open to discussing J.W.'s enrollment if DISTRICT 299 provided a nursing aide to facilitate the direct nursing minutes required by J.W.'s IEP. *See* February 6, 2018 Email Correspondence between E. Manning and K. Carrarini (Exhibit E to Due Process Complaint).

45.     In the meantime, S.W. toured Blue Cap on January 31, 2018 along with Dr. Jennifer Gorski, a licensed clinical psychologist who conducted the Independent Educational Evaluation of J.W. in spring of 2017.

46.     Based on the 30-minute tour, it was obvious to both S.W. and Dr. Gorski that Blue Cap would not be an appropriate placement for J.W. for the following reasons: First, the school lacked the requisite personnel, including but not limited to: the lack of full-time speech and occupational therapists, the lack of behavioral specialists, and the lack of autism-specific/ABA-trained staff members. Second, the curriculum is not geared towards students with autism. Third, the school did not have a system in place for collecting and analyzing data on students' educational and behavioral progress. Finally, Dr. Gorski expressed serious safety concerns for both J.W. and the other students due the fact that J.W. is mobile and, at times, unable to comprehend the safety needs of others and his would-be classmates are all bound to wheelchairs or hospital beds and have serious medical issues.

47.    The next day, on February 1, 2018, DISTRICT 299 informed S.W. that the final referral to Elim was denied: "due to [J.W.'s] medical needs and behavioral challenges, they did not feel Elim would be a good fit" for J.W.  January 13, 2018-February 12, 2018 Email Correspondence between K. Cercone, E. Manning, and K. Ilijic (Exhibit D to Due Process Complaint).

48.    Without any advance notice, the following day, on February 2, 2018, S.W. discovered a letter placed in J.W.'s backpack from DISTRICT 299's ODLSS, dated January 29, 2018, stating that DISTRICT 299 had unilaterally "determined that the IEP will be appropriately implemented in a special education program available at [Blue Cap]."  January 29, 2018 Letter to S. W. from Office of Diverse Learning Supports and Services Placement Department (Exhibit F to Due Process Complaint).  This letter was dated *two days before* S.W. was able to tour Blue Cap, and *three days before* DISTRICT 299 informed S.W. about the status of the remaining referral.

49.    On February 5, 2018, S.W. informed DISTRICT 299 that she was "not agree[ing] to have her son placed at Blue Cap. . . . [because] the school is not an appropriate fit for [J.W.] for a variety of reasons, including but not limited to: the lack of speech/OT staff, no autism-specific/ABA-trained staff, and safety concerns due to [J.W.]'s behavioral issues identified by the District."  February 5, 2018 Letter to K. Ilijic from E. Manning and K. Cercone (Exhibit G to Due Process Complaint).

50.    The February 5 communication requested "that the District place [J.W.] at Easterseals Tinley Park and provide a nurse to administer [J.W.]'s direct nursing minutes required by the IEP, pursuant to ILL. ADMIN. CODE tit. 23, § 226.310 ("Each school district

shall ensure that related services are provided if necessary to assist an eligible child in benefiting from his or her special education.") and 34 CFR § 300.34(a)." *Id.*

51.     As of the date of this filing, DISTRICT 299 has neither granted nor denied the February 5 requests.

### District 299's Unilateral Unenrollment of J.W. Without Prior Notice

52.     Instead of responding to S.W.'s February 5 request, Defendants unilaterally unenrolled J.W. from Christopher on February 12, 2018, and simultaneously prohibited his enrollment at Defendants' intended placement for J.W., Blue Cap.

53.      On February 12, 2018, J.W. inexplicably returned home from Christopher with all of his belongings.

54.     The bus attendant who dropped off J.W. informed S.W.'s mother, who was home to receive J.W. from the school bus, that it was J.W.'s final day at Christopher.

55.     When unpacking J.W.'s backpack that night, S.W. found a letter from DISTRICT 299's ODLSS, signed by Defendant KUBALANZA and dated February 7, 2018, which stated that after February 9, 2018, "your child will be required to attend the new school [Blue Cap] and will no longer be eligible to attend Christopher Elementary School." Ex. A.

56.     On February 14, 2018, S.W. contacted Blue Cap to enroll J.W.—as she was left with no choice by Defendants' unilateral unenrollment of J.W. on February 12—but was informed by Blue Cap that the school was unaware of Defendants' intention to place J.W. at Blue Cap.

57.     On information and belief, as of the date of this filing, Blue Cap does not have the ability to enroll J.W., because Blue Cap has not hired a dedicated paraprofessional for J.W., as is required by his IEP.

58.     On February 15, 2018, J.W. and S.W., through their attorneys, requested a due process hearing to be conducted pursuant to 20 U.S.C. § 1415(b)(2) and 23 Ill. Adm. Code § 226.15, based on their complaint that DISTRICT 299 was failing to provide J.W. with a free, appropriate public education.

59.     On February 16, 2018, S.W., through her attorneys, requested that Defendants immediately re-enroll J.W. in "an appropriate school until an appropriate therapeutic day school placement is ready to enroll him."  February 16, 2018 Email Correspondence Between K. Cercone and K. Ilijic.

60.     Defendants refused, instead stating that S.W. needed to confirm a legal position regarding a perceived "stay put" while Plaintiffs' Due Process Complaint was pending, which was factually impossible given the Defendants' unilateral unenrollment of J.W., as the Defendants have left J.W. with no school to "stay put" at.  *See id*.

61.     Defendants have excluded J.W. from attending school since February 12, 2018.

62.     With respect to each and every violation of law described in paragraphs 29-61 above, both JACKSON and KUBALANZA, by virtue of their positions with DISTRICT 299, knew or should have known that such acts and failures to act were in violation of the IDEA, Section 504, the ADA, and the Fourteenth Amendment to the U.S. Constitution, but, nevertheless, failed to take appropriate steps to assure that such violations did not occur.

63.     With respect to each and every violation of law described in paragraphs XX above, the actions and failures to act on the part of  JACKSON and KUBALANZA were in retaliation for the efforts by J.W. and his mother, S.W., to advocate for his rights under the ADA, and Section 504.

64. The acts and omissions on the part of DISTRICT 299, JACKSON, and KUBALANZA, each of them, as herein alleged, were knowing, intentional, willful, wanton, malicious, and oppressive.

65. Defendants' unilateral unenrollment of J.W. has and will continue to cause him irreparable injury for which there is no adequate remedy at law.

**CLAIMS**

**Count I**
**Violation of Section 504**

66. J.W. and S.W. reallege and incorporate by reference as though fully set forth herein, paragraphs 1-65 inclusive, of this Complaint.

67. In committing the act of unilaterally unenrolling J.W. from school without prior notice, DISTRICT 299, JACKSON and KUBALANZA, and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have thereby intentionally discriminated against J.W. solely on the basis of his disability by denying him meaningful access—indeed, any access—to school in violation of Section 504.

68. In committing the act of unilaterally unenrolling J.W. from school without prior notice, DISTRICT 299, JACKSON and KUBALANZA, each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have retaliated against J.W. for the advocacy for his rights by himself and by his mother, S.W., also in violation of Section 504.

69. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with deliberate indifference to, and total disregard for, the rights of J.W. and S.W.

70. As a result of the Defendants' misconduct described in this Count, Plaintiffs suffer continuing injuries and damages.

**Count II**
**Violation of the ADA**

71.     J.W. and S.W. reallege and incorporate by reference as though fully set forth herein, paragraphs 1-65 inclusive, of this Complaint.

72.     In committing the act of unilaterally unenrolling J.W. from school without prior notice, DISTRICT 299, JACKSON and KUBALANZA, and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have thereby intentionally discriminated against J.W. solely on the basis of his disability by denying him a "reasonable accommodation" necessary to achieve meaningful access—indeed, any access—to his education in violation of the ADA.

73.     In committing the act of unilaterally unenrolling J.W. from school without prior notice, DISTRICT 299, JACKSON and KUBALANZA, and each of them, have interfered with J.W.'s rights protected by the ADA, and have interfered with S.W.'s assistance of J.W. in exercising and enjoying those rights, also in violation of the ADA.

74.     In committing the act of unilaterally unenrolling J.W. from school without prior notice, DISTRICT 299, JACKSON and KUBALANZA, and each of them, have retaliated against J.W. for the advocacy for his rights by himself and by his mother, S.W., also in violation of the ADA.

75.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with deliberate indifference to, and total disregard for, the rights of J.W. and S.W.

76.     As a result of the Defendants' misconduct described in this Count, Plaintiffs suffer continuing injuries and damages.

**Count III**

**Violation of Section 1983**
**(14th Amendment of the U.S. Constitution)**

77.     J.W. and S.W. reallege and incorporate by reference as though fully set forth herein, paragraphs 1-65 inclusive, of this Complaint.

78.     In committing the act of unilaterally unenrolling J.W. from school without prior notice, DISTRICT 299, JACKSON in her official capacity, and KUBALANZA, in his official and individual capacity, have each acted under color of state law are currently depriving J.W. of any education, denying him of the free and public education, to which he is entitled under the IDEA, by knowingly and intentionally disregarding J.W.'s rights under the IDEA, in violation of Section 1983.

79.     To the extent that Defendants' February 7 letter was intended to provide prior written notice under 34 C.F.R. § 300.503, it fails because it was untimely, lacked the requisite content, and went above and beyond Defendants' authority, which is to only propose a change in the educational placement of J.W.

80.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with deliberate indifference to, and total disregard for, the rights of J.W. and S.W.

81.     As a result of the Defendants' misconduct described in this Count, Plaintiffs suffer continuing injuries and damages.

**<u>Count IV</u>**
**Violation of Section 1983**
**(14th Amendment of the U.S. Constitution)**

82.     J.W. and S.W. reallege and incorporate by reference as though fully set forth herein, paragraphs 1-65 inclusive, of this Complaint.

83. In committing the act of unilaterally unenrolling J.W. from school without prior notice and prohibiting his enrollment at any appropriate school, DISTRICT 299, JACKSON in her official capacity, and KUBALANZA, in his official and individual capacity, have each acted under color of state law and are currently subjecting S.W. to penalties by prohibiting her from complying with the Illinois Compulsory Attendance Law, 105 Ill. Comp. Stat. § 5/26-10, by knowingly and intentionally disregarding S.W.'s rights under the IDEA, in violation of Section 1983.

84. To the extent that Defendants' February 7 letter was intended to provide prior written notice under 34 C.F.R. § 300.503, it fails because it was untimely, lacked the requisite content, and went above and beyond Defendants' authority, which is to only propose a change in the educational placement of J.W.

85. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with deliberate indifference to, and total disregard for, the rights of J.W. and S.W.

86. As a result of the Defendants' misconduct described in this Count, Plaintiffs suffer continuing injuries and damages.

## PRAYER FOR RELIEF

WHEREFORE, J.W. and S.W. request judgment as follows:

A. As to **Counts I and II**, declare that DISTRICT 299, JACKSON and KUBALANZA in their official capacities, and each of them, have acted with bad faith, gross misjudgment and deliberate indifference and thereby intentionally discriminated against J.W. based on his disability, and have, in addition, retaliated against J.W. for his and his mother, S.W.'s advocacy, all in violation of Section 504 and the ADA.

B.       As to **Count III**, declare that DISTRICT 299, JACKSON in her official capacity, and KUBALANZA, in his official and individual capacity, and each of them, have acted in violation of Section 1983 by depriving J.W. of his rights under the IDEA as well as his procedural due process rights under the Fourteenth Amendment to the U.S. Constitution by unilaterally unenrolling J.W. from school without prior notice.

C.       As to **Count IV**, declare that DISTRICT 299, JACKSON in her official capacity, and KUBALANZA, in his official and individual capacity, and each of them, have acted in violation of Section 1983 by depriving S.W. of her procedural due process rights under the Fourteenth Amendment to the U.S. Constitution by unilaterally unenrolling J.W. from school without prior notice and prohibiting his enrollment at any other appropriate school, thereby subjecting S.W. to fines and penalties by prohibiting her from complying with state law.

D.       Issue without requirement of a bond, a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction restraining Defendants from failing to return J.W. to an appropriate school placement until an appropriate therapeutic day school placement is ready to enroll him.

E.       Award compensatory damages according to proof for **Counts I-IV**.

F.       Award punitive damages for **Counts III and IV**.

G.       Award Plaintiffs their costs and attorney fees pursuant to 42 U.S.C. § 1988; and

H.       For such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **J.W.**, and<br>**S.W.**, Individually and<br>As Parent and Next Friend of **J.W.**,<br>              Plaintiffs,<br><br>     v.<br><br>**CHICAGO PUBLIC SCHOOL DISTRICT<br>NO. 299, JANICE K. JACKSON, EdD** and<br>**RON KUBALANZA**,<br><br>          Defendants. | Case No. |

## <u>VERIFICATION</u>

I, ▮▮▮▮▮▮▮▮▮, state that I am a Plaintiff in the present case, I have read the foregoing

Complaint, and the contents thereof are true and correct to the best of my knowledge,

information and belief.

This declaration is executed under penalty of perjury, pursuant to 28 U.S.C. § 1746, on

February 20, 2018, in Chicago, Illinois.



Dated: February 20, 2018     Respectfully submitted,

               s/ *Mark W. DeMonte*
               Mark W. DeMonte
               Mark P. Rotatori
               Kenton J. Skarin
               Kristina K. Cercone
               Elizabeth E. Manning
               JONES DAY
               77 West Wacker
               Chicago, IL  60601.1692
               Telephone:  (312) 782-3939
               Fax:  (312) 782-8585
               mrotatori@jonesday.com
               mdemonte@jonesday.com
               kskarin@jonesday.com
               kcercone@jonesday.com
               emanning@jonesday.com

               *Counsel for Plaintiffs*

**<u>Certificate of Service</u>**

The undersigned, an attorney, hereby certifies that he caused a true and correct copy of the

foregoing Complaint to be served on the following counsel for Defendants Elizabeth Wagman and

Katie Ilijic, attorneys in District 299's Office of Diverse Learner Supports and Services for

Chicago Public Schools via email and U.S. mail, on this 20th day of February, 2018.

> Elizabeth Wagman
> Katie Ilijic
> Office of Diverse Learner Supports + Services
> 42 West Madison
> Chicago, Illinois 60602
> efwagman@cps.edu
> kilijic@cps.edu

> s/ *Mark DeMonte*
> One of the Attorneys for Plaintiffs